# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,<br><br>Plaintiff,<br><br>v.<br><br>INDIAN POND COUNTRY CLUB, INC.,<br><br>Defendant. | Civil Action No. 21-_____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Selective Insurance Company of South Carolina ("**Selective**"), by and through its undersigned attorney, brings this Complaint against Defendant, Indian Pond Country Club, Inc. ("**Indian Pond**") and states as follows:

## PARTIES

1. Selective is an Indiana corporation with its principal place of business located in the State of Indiana. Selective is registered to do business in the Commonwealth of Massachusetts.

2. Indian Pond is a Massachusetts corporation with its principal place of business at 60 Country Club Way, Kingston, Massachusetts.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). This action is between citizens of different states, and the amount in controversy exceeds $75,000, excluding interest and costs.

4. This Court has the authority and jurisdiction to declare the parties' rights and obligations as requested herein pursuant to 28 U.S.C. § 2201.

5.     This Court has personal jurisdiction over Indian Pond because it is a resident of the Commonwealth of Massachusetts and committed an act or acts within the Commonwealth of Massachusetts out of which this action arises.

6.     This District is a proper venue for this action because it is the District in which Indian Pond resides and it is the District where a substantial part of the events or omissions giving rise to this action occurred.

## FACTUAL ALLEGATIONS

7.     Indian Pond was sued by Erik and Athina Tenczar ("**Tenczars**") in a lawsuit styled: *Erik Tenczar and Athina Tenczar v. Indian Pond Country Club, Inc., et al.*, Civil Action No. 1883CV00757, pending in the Superior Court of Plymouth County, for the Commonwealth of Massachusetts ("**Underlying Lawsuit**").

8.     A copy of the Verified Complaint filed in the Underlying Lawsuit ("**Underlying Complaint**") is attached hereto as Exhibit A.

### The Underlying Lawsuit

9.     In the Underlying Complaint, the Tenczars allege that they live in a house at 294 Country Club Way, Kingston, Massachusetts, which abuts the fifteenth hole of a private golf course owned and operated by Indian Pond.

10.    The Tenczars allege that the house was constructed in 2017 and purchased by them on April 27, 2017.

11.    The Tenczars allege that prior to their purchase of the house on April 27, 2017, the house repeatedly was struck by golf balls hit by golfers on the fifteenth hole of the golf course, causing property damage.

12. The Tenczars allege that shortly after the purchase of their house, they observed golf balls hit by golfers on the fifteenth hole of the golf course striking their house and causing property damage, including damage to the house's siding, multiple broken windows, and damage to the deck.

13. The Tenczars allege that the continuous threat of golf ball strikes interfered with the use and enjoyment of their property.

14. The Tenczars allege that they contacted Indian Pond to inform its ownership of the extent and nature of the problem. The Tenczars allege that they met with Frederick M. Tonsberg, Sr., the principal of Indian Pond, and requested that Indian Pond install protective landscaping or netting or alter the layout of the fifteenth hole, but that Indian Pond failed to respond following that meeting.

15. The Tenczars allege that Indian Pond failed to respond to several additional attempts by the Tenczars to contact Indian Pond, including multiple telephone calls and a May 1, 2018 letter sent via certified mail by counsel retained by the Tenczars.

16. The Tenczars allege that on July 8, 2018, a golf ball struck and shattered a window of their home, "terrifying" their young daughter and leading them to contact the Kingston Police Department to file a report.

17. The Tenczars allege that the police reportedly spoke with Tonsberg shortly after the Tenczars had filed their complaint, and Tonsberg indicated to the police that he was aware of the situation but did not consider it his problem because the Tenczars, before purchasing their property, should have been aware of the potential for golf balls to enter the property.

18. The Tenczars allege that they again contacted the local police on July 10, 2018, after another golf ball struck their home, and were told by the police that their complaints were a civil matter.

19. In the Underlying Complaint, the Tenczars pled trespass and nuisance, and sought equitable and injunctive relief against Indian Pond.

### Trial in the Underlying Lawsuit

20. A trial in the Underlying Lawsuit was held from November 29, 2021 to December 6, 2021.

21. Upon information and belief, the Tenczars proceeded at trial under only the trespass count.

22. Upon information and belief, the Tenczars presented evidence at trial that they first noticed damage to their home – a broken window – from a golf ball about a month after their purchase and that between April 2017 and December 2021, approximately sixty golf balls struck their house, damaging its siding, and breaking approximately eight windows.

23. Upon information and belief, the Tenczars presented the following items at trial as constituting damage to their house: (1) a $24,578.78 estimate to replace twenty-six windows facing the fifteenth tee (although only eight of the windows were broken) and to replace all of the house's siding facing the fifteenth tee, even though not all of the siding was damaged; (2) an estimate of $46,500 to install protective netting; and (3) a bill for $850 to obtain the proposal for the protective netting.

24. Upon information and belief, the Tenczars testified that golf balls hitting their property left them mentally exhausted and feeling unsafe.

25. Upon information and belief, the Tenczars did not present any evidence of injuries to persons caused by errant golf balls.

26. Upon information and belief, the builder of the Tenczars' house, Paul Bisceglia, testified at trial that two of the house's windows were broken by errant golf balls during construction. Bisceglia further testified that he informed the President of Indian Pond about the broken windows and was told that such damage to abutting properties was typical.

27. On December 6, 2021, the jury returned a verdict ("**Jury's Verdict**") in which it found that: (1) the Tenczars "exclusively own or control the land in question"; (2) Indian Pond "set in motion a force which, in the usual course of events, caused damages to the property of the [Tenczars]"; (3) the entry onto the land of the Tenczars was without their permission; and (4) the Tenczars suffered injury or harm as a result of the entry onto their land. A copy of the Jury's Verdict is attached hereto as Exhibit B.

28. The Jury's Verdict awarded the Tenczars $3,500,000 in damages, comprised of $100,000 "to compensate the [Tenczars] for their reasonable expenses which have been incurred or will be incurred to investigate and/or repair the damages," and $3,400,000 "to compensate the [Tenczars] for mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future."

29. On December 6, 2021, the court entered judgment on the jury's verdict ("**Judgment**"). A copy of the Judgment is attached hereto as Exhibit C.

30. On December 13, 2021, Superior Court Judge William White ordered injunctive relief against Indian Pond ("**Permanent Injunction**"). A copy of the Permanent Injunction is attached hereto as Exhibit D.

**Selective's Policy**

31. Selective issued Commercial Policy No. S 2090129 to Indian Pond for the policy period September 21, 2017 to September 21, 2018 ("**Policy**"). A copy of the Policy is attached hereto as Exhibit E.

32. Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the Policy's Commercial General Liability Coverage Form CG 00 01 04 13 ("**CGL Form**") provides coverage for liability because of covered bodily injury or property damage. The Policy provides in pertinent part:

> **SECTION I — COVERAGES**
>
> **COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> 1. **Insuring Agreement**
>
>     1. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>     2. This insurance applies to "bodily injury" and "property damage" only if:
>         - **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"
>         - **(2)** The "bodily injury" or "property damage" occurs during the policy period; and
>         - **(3)** Prior to the policy period, no insured listed under Paragraph **1.** of **Section II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>         …
>     d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **Section II – Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
>         …
>         - **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
>         - **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

33. The Policy's CGL Form defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

34. The Policy's CGL Form defines "property damage" in pertinent part as "physical injury to tangible property."

35. The Policy provides the following "bodily injury" definition in the ElitePac® General Liability Extension Endorsement Form CG 73 00 01 16:

> **Mental Anguish Amendment**
> (This provision does not apply in New York).
> Definition **3.** "Bodily injury" under **SECTION V – DEFINITIONS** is deleted in its entirety and replaced with the following:
>
> **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. This includes mental anguish resulting from any bodily injury, sickness or disease sustained by a person. (In New York, mental anguish has been determined to be "bodily injury").

36. Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the Policy's CGL Form provides coverage for liability because of covered personal and advertising injury. The Policy provides in pertinent part:

> **SECTION I — COVERAGES**
>
> **COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **A. Insuring Agreement**
>
> 1. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result…
> 2. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

37. The Policy's CGL Form defines "personal and advertising injury" in pertinent part as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses … **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private

-7-

occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor…"

38. Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the Policy's Commercial Umbrella Liability Coverage Form CXL 4 04 03 ("**Umbrella Form**") provides coverage for liability because of covered bodily injury, property damage, or personal and advertising injury. The Policy provides in pertinent part:

>    **SECTION I — COVERAGES**
>
>    **A. Insuring Agreement**
>
>    1. We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies…
>
>    **SECTION IV — CONDITIONS**
>
>    **F. Loss Payable**
>
>    Liability under this Coverage Part shall not apply unless and until the insured or the insured's "underlying insurer" has become obligated to pay the "retained limit". Such obligation by the insured to pay part of the "ultimate net loss" shall have been previously determined by a final settlement or judgment after an actual trial or written agreement between the insured, claimant and us.
>
>    **SECTION V — DEFINITIONS**
>
>    **18.** "Retained limit" means the greater of:
>
>    a. The total of the limits as shown in the Declarations for the coverage(s) in question, and the limits of any insurance not shown in the declarations that is valid and collectible; or
>    b. The limit shown in the Declarations as the "self-retained limit"…

39. The Policy's Umbrella Form defines "property damage" in pertinent part as "physical injury to tangible property."

40. The Policy's Umbrella Form defines "bodily injury" as "bodily injury, sickness, disease or disability sustained by a person, including death from any of these at any time including

mental anguish or mental injury sustained by a person who has suffered a covered 'bodily injury' as defined in this paragraph."

41. The Policy's Umbrella Form defines "personal and advertising injury" in pertinent part as "injury, including consequential 'bodily injury' arising out of one or more of the following offenses … **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies; committed by or on behalf of its owner, landlord or lessor…"

42. Selective agreed to defend Indian Pond in the Underlying Lawsuit under a reservation of rights and has paid the reasonable defense costs of Indian Pond's personal counsel through trial and verdict. Selective will continue to pay personal counsel's reasonable defense costs while counsel is pursuing various post-judgment motions.

43. The Policy obligates Selective to indemnify Indian Pond against that part of the Judgment awarding the Tenczars damages for "property damage" to the extent that such "'property damage' occurs during the policy period," is not a "continuation, change or resumption of" "property damage" occurring prior to the policy period, and Indian Pond had no notice prior to the policy period of the "property damage".

44. The Policy's CGL Form does not obligate Selective to indemnify Indian Pond against: (1) that part of the Judgment awarding the Tenczars damages for "mental and emotional suffering"; or (2) the Permanent Injunction, because neither constitutes "bodily injury", "property damage", or "personal and advertising injury".

45. The Policy's Umbrella Form does not obligate Selective to indemnify Indian Pond against that part of the Judgment awarding the Tenczars damages for "property damage" because those damages will not exceed the limits shown in the Policy's Declarations for the CGL Form

and, therefore, Indian Pond or Indian Pond's "underlying insurer" has not become obligated to pay the "retained limit."

46. The Policy's Umbrella Form does not obligate Selective to indemnify Indian Pond against: (1) that part of the Judgment awarding the Tenczars damages for "mental and emotional suffering"; or (2) the Permanent Injunction, because neither constitutes "bodily injury", "property damage", or "personal and advertising injury."

47. Accordingly, Selective has denied Indian Pond's requests for indemnity against uncovered portions of the Judgment and the Permanent Injunction.

## COUNT I – DECLARATORY JUDGMENT

48. Selective incorporates by reference the preceding paragraphs above as if fully set forth herein.

49. The Underlying Lawsuit alleges that Indian Pond trespassed on property owned by the Tenczars by golf balls hit from the fifteenth hole of the golf course owned and operated by Indian Pond.

50. At trial in the Underlying Lawsuit, the Tenczars did not present any evidence of injuries to persons caused by errant golf balls.

51. The Jury's Verdict found that the Tenczars "exclusively own or control the land in question."

52. The Jury's Verdict awarded the Tenczars damages for "mental and emotional suffering" and the Judgment was entered on the Jury's Verdict.

53. The court ordered the Permanent Injunction against Indian Pond.

54. Under the Policy's CGL Form and Umbrella Form, the Judgment awarding the Tenczars damages for "mental and emotional suffering" and the Permanent Injunction do not constitute "bodily injury", "property damage", or "personal and advertising injury."

55. Selective is entitled to a declaration that it owes no duty to indemnify Indian Pond for: (1) that part of the Judgment awarding the Tenczars damages for "mental and emotional suffering"; and (2) the Permanent Injunction.

56. An actual and justiciable controversy exists between Selective and Indian Pond concerning their respective rights and liabilities under the Selective Policy.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons set forth above, Plaintiff Selective respectfully prays for judgment as follows:

A. Declaring that the Policy does not provide indemnity coverage for: (1) that part of the Judgment awarding the Tenczars "mental and emotional suffering" damages; and (2) the Permanent Injunction; and

B. Declaring that Selective has no obligation under the Policy to indemnify Indian Pond under the Policy for: (1) that part of the Judgment awarding the Tenczars "mental and emotional suffering" damages; and (2) the Permanent Injunction; and

C. Awarding such other further relief as the Court deems just, equitable and proper.

February 18, 2022                                  Respectfully submitted,

**Selective Insurance Company of South Carolina**

By its attorney,

_/s/ Michael Mullins_
Michael P. Mullins, BBO #665123
Day Pitney LLP
One Federal Street
Boston, MA 02110
Tel.: (617) 345-4776
mmullins@daypitney.com