## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

SELECTIVE INSURANCE COMPANY OF
SOUTH CAROLINA,

          Plaintiff,

    v.

INDIAN POND COUNTRY CLUB, INC.;
ERIK TENCZAR; ATHINA TENCZAR,

          Defendants.

Civil Action No. 1:22-CV-10286-DJC

## AFFIDAVIT OF BRENDAN M. DONAHUE
## IN SUPPORT OF MOTION FOR ENTRY OF DEFAULT
## AGAINST DEFENDANTS ERIK TENCZAR AND ATHINA TENCZAR

1.     I am an associate with the law firm of Day Pitney, LLP, counsel for Plaintiff Selective Insurance Company of South Carolina ("Selective"). I submit this affidavit in support of Selective's Motion for Entry of Default Against Defendants Erik Tenczar and Athina Tenczar (collectively, the "Tenczars").

2.     Selective filed its Amended Complaint in this matter on August 3, 2022. A true and correct copy of the Amended Complaint is annexed hereto as **Exhibit 1** and incorporated herein by reference.

3.     A Summons and the Amended Complaint were served on August 9, 2022 on Erik Tenczar by personal service at 294 Country Club Way, Kingston, MA 02364. *See* Fed. R. Civ. P. 4(e)(2)(A).

4.       A Summons and the Amended Complaint were served on August 9, 2022 on Athina Tenczar by service left at Athina Tenczar's residence at 294 Country Club Way, Kingston, MA 02364, with Erik Tenczar, a person of suitable age and discretion who resides there.  *See* Fed. R. Civ. P. 4(e)(2)(B).

5.       A true and correct copy of the Proof of Service for Erik Tenczar and Athina Tenczar is annexed hereto as **Exhibit 2** and incorporated herein by reference.

6.       The Tenczars had twenty-one (21) days after being served with the Summons and Amended Complaint, until August 30, 2022, to plead or otherwise defend the Amended Complaint.  *See* Fed. R. Civ. P. 12.

7.       Despite the foregoing, the Tenczars did not respond to the Amended Complaint or otherwise appear in this action within the time provided by the Federal Rules of Civil Procedure.

8.       Neither of the Tenczars are a minor or an incompetent person.  I have no reason to believe that either of the Tenczars are in military service.

8.       Accordingly, because the Tenczars have failed to plead or otherwise defend the Amended Complaint, under Fed. R. Civ. P. 55(a), entry of a default is appropriate.


I declare under penalty of perjury that the foregoing is true and correct.  Executed on the 7th day of September, 2022.

Brendan M. Donahue

-2-

112718027.2

# Exhibit 1

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SELECTIVE INSURANCE COMPANY OF SOUTH CAROLINA,<br><br>                    Plaintiff,<br><br>        v.<br><br>INDIAN POND COUNTRY CLUB, INC.;<br>ERIK TENCZAR; ATHINA TENCZAR<br><br>                    Defendants. | Civil Action No. 1:22-cv-10286-DJC |

## AMENDED COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Selective Insurance Company of South Carolina ("**Selective**"), by and through its undersigned attorneys, brings this Amended Complaint against Defendants Indian Pond Country Club, Inc. ("**Indian Pond**") and Erik Tenczar and Athina Tenczar (collectively, the "**Tenczars**") and states as follows:

### PARTIES

1.      Selective is an Indiana corporation with its principal place of business located in the State of Indiana. Selective is registered to do business in the Commonwealth of Massachusetts.

2.      Indian Pond is a Massachusetts corporation with its principal place of business at 60 Country Club Way, Kingston, Massachusetts.

3.      Erik Tenczar and Athina Tenczar, husband and wife, are citizens of Massachusetts and residents of Kingston, Massachusetts.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.
§ 1332(a).   This action is between citizens of different states, and the amount in controversy
exceeds $75,000, excluding interest and costs.

5.      This Court has the authority and jurisdiction to declare the parties' rights and
obligations as requested herein pursuant to 28 U.S.C. § 2201.

6.      This Court has personal jurisdiction over the Defendants because the Defendants:
(1) are residents of the Commonwealth of Massachusetts; (2) committed an act or acts within the
Commonwealth of Massachusetts out of which this action arises; or (3) have asserted underlying
claims that are the subject matter of this insurance coverage action in the Superior Court of
Plymouth County, for the Commonwealth of Massachusetts.

7.      This District is a proper venue for this action because it is the District in which the
Defendants reside and it is the District where a substantial part of the events or omissions giving
rise to this action occurred.

## FACTUAL ALLEGATIONS

8.      Indian Pond was sued by the Tenczars in a lawsuit styled:  *Erik Tenczar and Athina
Tenczar v. Indian Pond Country Club, Inc., et al.*, Civil Action No. 1883CV00757, in the Superior
Court of Plymouth County, for the Commonwealth of Massachusetts ("**Underlying Lawsuit**").

9.      A copy of the Verified Complaint filed in the Underlying Lawsuit ("**Underlying
Complaint**") is attached hereto as Exhibit A.

## The Underlying Lawsuit

10.     In the Underlying Complaint, the Tenczars allege that they live in a house at 294 Country Club Way, Kingston, Massachusetts, which abuts the fifteenth hole of a private golf course owned and operated by Indian Pond.

11.     The Tenczars allege that the house was constructed in 2017 and purchased by them on April 27, 2017.

12.     The Tenczars allege that prior to their purchase of the house on April 27, 2017, the house repeatedly was struck by golf balls hit by golfers on the fifteenth hole of the golf course, causing property damage.

13.     The Tenczars allege that shortly after the purchase of their house, they observed golf balls hit by golfers on the fifteenth hole of the golf course striking their house and causing property damage, including damage to the house's siding, multiple broken windows, and damage to the deck.

14.     The Tenczars allege that the continuous threat of golf ball strikes interfered with the use and enjoyment of their property.

15.     The Tenczars allege that they contacted Indian Pond to inform its ownership of the extent and nature of the problem. The Tenczars allege that they met with Frederick M. Tonsberg, Sr., the principal of Indian Pond, and requested that Indian Pond install protective landscaping or netting or alter the layout of the fifteenth hole, but that Indian Pond failed to respond following that meeting.

16.     The Tenczars allege that Indian Pond failed to respond to several additional attempts by the Tenczars to contact Indian Pond, including multiple telephone calls and a May 1, 2018 letter sent via certified mail by counsel retained by the Tenczars.

17.     The Tenczars allege that on July 8, 2018, a golf ball struck and shattered a window of their home, "terrifying" their young daughter and leading them to contact the Kingston Police Department to file a report.

18.     The Tenczars allege that the police reportedly spoke with Tonsberg shortly after the Tenczars had filed their complaint, and Tonsberg indicated to the police that he was aware of the situation but did not consider it his problem because the Tenczars, before purchasing their property, should have been aware of the potential for golf balls to enter their property.

19.     The Tenczars allege that they again contacted the local police on July 10, 2018, after another golf ball struck their home, and were told by the police that their complaints were a civil matter.

20.     In the Underlying Complaint, the Tenczars pled trespass and nuisance, and sought equitable and injunctive relief against Indian Pond.

### Trial in the Underlying Lawsuit

21.     A trial in the Underlying Lawsuit was held from November 29, 2021 to December 6, 2021.

22.     Upon information and belief, the Tenczars proceeded at trial under only the trespass count.

23.     Upon information and belief, the Tenczars presented evidence at trial that they first noticed damage to their home – a broken window – from a golf ball about a month after their purchase and that between April 2017 and December 2021, approximately sixty golf balls struck their house, damaging its siding, and breaking approximately eight windows.

24.     Upon information and belief, the Tenczars presented the following items at trial as constituting damage to their house: (1) a $24,578.78 estimate to replace twenty-six windows facing

the fifteenth tee (although only eight of the windows were broken) and to replace all of the house's siding facing the fifteenth tee, even though not all of the siding was damaged; (2) an estimate of $46,500 to install protective netting; and (3) a bill for $850 to obtain the proposal for the protective netting.

25.    Upon information and belief, the Tenczars testified that golf balls hitting their property left them mentally exhausted and feeling unsafe.

26.    Upon information and belief, the Tenczars did not present any evidence of injuries to persons caused by errant golf balls.

27.    Upon information and belief, the builder of the Tenczars' house, Paul Bisceglia, testified at trial that two of the house's windows were broken by errant golf balls during construction. Bisceglia further testified that he informed the President of Indian Pond about the broken windows and was told that such damage to abutting properties was typical.

28.    Upon information and belief, the Tenczars did not seek to recover any damages for loss of use of their property.

29.    On December 6, 2021, the jury returned a verdict ("**Jury's Verdict**") in which it found that: (1) the Tenczars "exclusively own or control the land in question"; (2) Indian Pond "set in motion a force which, in the usual course of events, caused damages to the property of the [Tenczars]"; (3) the entry onto the land of the Tenczars was without their permission; and (4) the Tenczars suffered injury or harm as a result of the entry onto their land. A copy of the Jury's Verdict is attached hereto as Exhibit B.

30.    The Jury's Verdict awarded the Tenczars $3,500,000 in damages, comprised of $100,000 "to compensate the [Tenczars] for their reasonable expenses which have been incurred or will be incurred to investigate and/or repair the damages," and $3,400,000 "to compensate the

-5-

[Tenczars] for mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future."

31.     On December 6, 2021, the court entered judgment on the jury's verdict ("**Judgment**"). A copy of the Judgment is attached hereto as Exhibit C.

32.     On December 13, 2021, Superior Court Judge William White ordered injunctive relief against Indian Pond ("**Permanent Injunction**"). A copy of the Permanent Injunction is attached hereto as Exhibit D.

33.     On March 3, 2022, Judge White denied Indian Pond's Post-Trial Motions for (1) Judgment Notwithstanding the Verdict and (2) a New Trial, or in the Alternative, for a Remittitur of the Damages Award, and granted the Tenczars' Post-Trial Motion for Real Estate Attachment.

34.     On March 15, 2022, Indian Pond filed a Notice of Appeal.

### Selective's Policy

35.     Selective issued Commercial Policy No. S 2090129 to Indian Pond for the policy period September 21, 2017 to September 21, 2018 ("**Policy**"). A copy of the Policy is attached hereto as Exhibit E.

36.     Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the Policy's Commercial General Liability Coverage Form CG 00 01 04 13 ("**CGL Form**") provides coverage for liability because of covered bodily injury or property damage. The Policy provides in pertinent part:

**SECTION I — COVERAGES**

**COVERAGE A — BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.  Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend against any

"suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph **1.** of **Section II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

…

**d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **Section II – Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

…

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

37. The Policy's CGL Form defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

38. The Policy's CGL Form defines "property damage" as follows:

**17.** "Property Damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

39. The Policy provides the following "bodily injury" definition in the ElitePac® General Liability Extension Endorsement Form CG 73 00 01 16:

**Mental Anguish Amendment**
(This provision does not apply in New York).
Definition **3.** "Bodily injury" under **SECTION V – DEFINITIONS** is deleted in its entirety and replaced with the following:

**3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time. This includes mental anguish resulting from any bodily injury, sickness or disease sustained by a person. (In New York, mental anguish has been determined to be "bodily injury").

40. The Policy's CGL Form contains the following exclusion for "expected or intended injury":

**2. Exclusions**

This insurance does not apply to:

**a. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

41. Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the Policy's CGL Form provides coverage for liability because of covered personal and advertising injury. The Policy provides in pertinent part:

**SECTION I — COVERAGES**

**COVERAGE B — PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result…

**b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

42. The Policy's CGL Form defines "personal and advertising injury" in pertinent part as "injury, including consequential 'bodily injury', arising out of one or more of the following offenses … **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor…"

43. Subject to, among other things, its terms, conditions, retentions, limitations and exclusions, the Policy's Commercial Umbrella Liability Coverage Form CXL 4 04 03 ("**Umbrella**

-8-

**Form**") provides coverage for liability because of covered bodily injury, property damage, or personal and advertising injury. The Policy provides in pertinent part:

**SECTION I — COVERAGES**

**A.  Insuring Agreement**

1.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies …

2.  This insurance applies to "bodily injury", or "property damage" only if:
    a.  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
    b.  The "bodily injury" or "property damage" occurs during the policy period; and
    c.  Prior to the policy period, no insured listed under Paragraph **A.** of **Section II – Who Is An Insured** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
        …

4.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **A.** of **Section II – Who Is An Insured** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:
        …
    b.  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
    c.  Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**SECTION IV — CONDITIONS**

**F.  Loss Payable**

Liability under this Coverage Part shall not apply unless and until the insured or the insured's "underlying insurer" has become obligated to pay the "retained limit". Such obligation by the insured to pay part of the "ultimate net loss" shall have been previously determined by a final settlement or judgment after an actual trial or written agreement between the insured, claimant and us.

**SECTION V — DEFINITIONS**

18.  "Retained limit" means the greater of:

    a.  The total of the limits as shown in the Declarations for the coverage(s) in question, and the limits of any insurance not shown in the declarations that is valid and collectible; or
    b.  The limit shown in the Declarations as the "self-retained limit"…

-9-

44.     The Policy's Umbrella Form defines "property damage" as follows:

**17.** "Property Damage" means:

    **a.**  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, (including systems and applications software), hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

45.     The Policy's Umbrella Form defines "bodily injury" as "bodily injury, sickness, disease or disability sustained by a person, including death from any of these at any time including mental anguish or mental injury sustained by a person who has suffered a covered 'bodily injury' as defined in this paragraph."

46.     The Policy's Umbrella Form defines "personal and advertising injury" in pertinent part as "injury, including consequential 'bodily injury' arising out of one or more of the following offenses … **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies; committed by or on behalf of its owner, landlord or lessor…"

47.     The Policy's Umbrella Form contains the following exclusion for "expected or intended injury":

**B. Exclusions**

This insurance does not apply to:

…

**7. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

48.     Selective agreed to defend Indian Pond in the Underlying Lawsuit under a reservation of rights and has paid the reasonable defense costs of Indian Pond's personal counsel

through trial and verdict. Selective will continue to pay personal counsel's reasonable defense costs while counsel is pursuing an appeal.

49. The Policy obligates Selective to indemnify Indian Pond against that part of the Judgment awarding the Tenczars damages for "property damage" to the extent that such "'property damage' occurs during the policy period," is not a "continuation, change or resumption of" "property damage" occurring prior to the policy period, and Indian Pond had no notice prior to the policy period of the "property damage".

50. The Policy's CGL Form does not obligate Selective to indemnify Indian Pond against "property damage" that (1) was caused by an "occurrence" that predated the Policy period; (2) Indian Pond became aware had occurred, in whole or in part, prior to the Policy period, (3) was a "continuation, change or resumption" of "property damage" predating the Policy period, or (4) was "expected or intended from the standpoint of [Indian Pond]."

51. The Policy's CGL Form does not obligate Selective to indemnify Indian Pond against: (1) that part of the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future"; or (2) the Permanent Injunction, because neither constitutes "bodily injury", "property damage", or "personal and advertising injury".

52. The Policy's Umbrella Form does not obligate Selective to indemnify Indian Pond against that part of the Judgment awarding the Tenczars damages for "property damage" because those damages will not exceed the limits shown in the Policy's Declarations for the CGL Form and, therefore, Indian Pond or Indian Pond's "underlying insurer" has not become obligated to pay the "retained limit."

-11-

53.     The Policy's Umbrella Form does not obligate Selective to indemnify Indian Pond against "property damage" that (1) was caused by an "occurrence" that predated the Policy period; (2) Indian Pond became aware had occurred, in whole or in part, prior to the Policy period, (3) was a "continuation, change or resumption" of "property damage" predating the Policy period, or (4) was "expected or intended from the standpoint of [Indian Pond]."

54.     The Policy's Umbrella Form does not obligate Selective to indemnify Indian Pond against: (1) that part of the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future"; or (2) the Permanent Injunction, because neither constitutes "bodily injury", "property damage", or "personal and advertising injury."

55.     Indian Pond requested that Selective indemnify it for the Judgment and Permanent Injunction.

56.     Selective denied indemnity for that part of the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future."

57.     Selective denied indemnity for the Permanent Injunction.

58.     Selective denied indemnity for "property damage" to the extent (1) the "property damage" was caused by an "occurrence" that predated the Policy period, (2) Indian Pond became aware the "property damage" had occurred, in whole or in part, prior to the Policy period, (3) the "property damage" was a "continuation, change or resumption" of "property damage" predating the Policy period, or (4) the "property damage" was "expected or intended from the standpoint of the [Indian Pond]."

## COUNT I – DECLARATORY JUDGMENT

59.     Selective incorporates by reference the preceding paragraphs above as if fully set forth herein.

60.     The Underlying Lawsuit alleges that Indian Pond trespassed on property owned by the Tenczars by golf balls hit from the fifteenth hole of the golf course owned and operated by Indian Pond.

61.     At trial in the Underlying Lawsuit, the Tenczars did not present any evidence of injuries to persons caused by errant golf balls.

62.     At trial in the Underlying Lawsuit, the Tenczars did not seek to recover any damages for loss of use of their property.

63.     The Jury's Verdict found that the Tenczars "exclusively own or control the land in question."

64.     The Jury's Verdict awarded the Tenczars damages "to compensate the [Tenczars] for their reasonable expenses which have been incurred or will be incurred to investigate and/or repair the damages" and for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future," and the Judgment was entered on the Jury's Verdict.

65.     The court ordered the Permanent Injunction against Indian Pond.

66.     Under the Policy's CGL Form, the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future" does not constitute "bodily injury."

67.     Under the Policy's CGL Form, the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future" does not constitute "property damage."

68.     Under the Policy's CGL Form, the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future" does not constitute "personal and advertising injury."

69.     Under the Policy's CGL Form, the Permanent Injunction does not constitute "bodily injury", "property damage", or "personal and advertising injury."

70.     Under the Policy's Umbrella Form, the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future" does not constitute "bodily injury."

71.     Under the Policy's Umbrella Form, the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future" does not constitute "property damage."

72.     Under the Policy's Umbrella Form, the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future" does not constitute "personal and advertising injury."

73.     Under the Policy's Umbrella Form, the Permanent Injunction does not constitute "bodily injury", "property damage", or "personal and advertising injury."

74.     Selective is entitled to a declaration that it owes no duty to indemnify Indian Pond for that part of the Judgment awarding the Tenczars damages for "property damage" to the extent that (1) the "property damage" was caused by an "occurrence" that predated the Policy period, (2) Indian Pond became aware that the "property damage" had occurred, in whole or in part, prior to

-14-

the Policy period, (3) the "property damage" was a "continuation, change or resumption" of "property damage" predating the Policy period, or (4) the "property damage" was "expected or intended from the standpoint of the [Indian Pond]."

75.     Selective is entitled to a declaration that it owes no duty to indemnify Indian Pond for that part of the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future."

76.     Selective is entitled to a declaration that it owes no duty to indemnify Indian Pond for the Permanent Injunction.

77.     An actual and justiciable controversy exists between Selective and the Defendants concerning their respective rights and liabilities under the Selective Policy.

## PRAYER FOR RELIEF

**WHEREFORE**, for the reasons set forth above, Plaintiff Selective respectfully prays for judgment as follows:

A. Declaring that the Policy does not provide indemnity coverage for:

    a. That part of the Judgment awarding the Tenczars damages for "property damage" to the extent (1) the "property damage" was caused by an "occurrence" that predated the Policy period, (2) Indian Pond became aware that the "property damage" had occurred, in whole or in part, prior to the Policy period, (3) the "property damage" was a "continuation, change or resumption" of "property damage" predating the Policy period, or (4) the "property damage" was "expected or intended from the standpoint of [Indian Pond]";

    b. That part of the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future";

    c. The Permanent Injunction;

B. Declaring that Selective has no obligation under the Policy to indemnify Indian Pond under the Policy for:

    a. That part of the Judgment awarding the Tenczars damages for "property damage" to the extent (1) the "property damage" was caused by an "occurrence" that predated the Policy period, (2) Indian Pond became aware that the "property damage" had occurred, in whole or in part, prior to the Policy period, (3) the

"property damage" was a "continuation, change or resumption" of "property damage" predating the Policy period, or (4) the "property damage" was "expected or intended from the standpoint of [Indian Pond]";

b.  That part of the Judgment awarding the Tenczars damages for "mental and emotional suffering and any other items of general damages which have been incurred or will be incurred in the future";

c.  The Permanent Injunction;

C.  Awarding such other further relief as the Court deems just, equitable and proper.

August 3, 2022                              Respectfully submitted,

                                           **Selective Insurance Company of South Carolina**

                                           By its attorneys,

                                           */s/ Michael P. Mullins*
                                           Michael P. Mullins, BBO # 665123
                                           Brendan M. Donahue, BBO # 708768
                                           Day Pitney LLP
                                           One Federal Street, 29th Floor
                                           Boston, MA 02110
                                           Tel.: (617) 345-4776
                                           mmullins@daypitney.com
                                           bdonahue@daypitney.com

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 3, 2022.

*/s/ Michael P. Mullins*

Michael P. Mullins

# Exhibit 2

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 1:22-CV-10286-DJC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* ERIK TENCZAR was received by me on *(date)* Aug 4, 2022 .

☒   I personally served the summons on the individual at *(place)* 294 COUNTRY CLUB WAY, KINGSTON, MA 02364-4121 on *(date)* Tue, Aug 09 2022 @ 6:10 p.m.; or

☐   I left the summons at the individual's residence or usual place of abode with *(name)* _____ , a person of suitable age and discretion who resides there, on *(date)* _____ , and mailed a copy to the individual's last known address; or

☐   I served the summons on *(name of individual)* _____ , who is designated by law to accept service of process on behalf of *(name of organization)* _____ on *(date)* _____ ; or

☐   I returned the summons unexecuted because: _____ ; or

☐   Other: _____ ; or

My fees are $ _____ for travel and $ _____ for services, for a total of $.

I declare under penalty of perjury that this information is true.

Date: 08/10/2022

_Server's signature_

MATTHEW ROBERTSON Process Server and Disinterested Person

_Printed name and title_

92 State Street 8th Floor, Boston, MA 02109

_Server's address_

Additional information regarding attempted service, etc.:
1) Successful Attempt: Aug 9, 2022, 6:10 pm EDT at 294 COUNTRY CLUB WAY, KINGSTON, MA 02364-4121 received by ERIK TENCZAR.

**Documents Served:** SUMMONS IN A CIVIL ACTION AND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT.

AO 440 (Rev. 06/12) Summons in a Civil Action (Page 2)

Civil Action No. 1:22-CV-10286-DJC

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* <u>ATHINA TENCZAR</u> was received by me on *(date)* <u>Aug 4,</u> <u>2022</u> .

☐ I personally served the summons on the individual at *(place)* _____ on *(date)* _____ ; or

☒ I left the summons at the individual's residence or usual place of abode with *(name)* <u>Erik Tenczar, Husband</u> , a person of suitable age and discretion who resides there, 294 Country Club Way, Kingston, MA 02364 on *(date)* <u>Tue, Aug 09 2022 @ 6:10 p.m.</u> , and mailed a copy to the individual's last known address at 294 Country Club Way, Kingston, MA 02364 on August 10, 2022.

☐ I served the summons on *(name of individual)* _____ , who is designated by law to accept service of process on behalf of *(name of organization)* _____ on *(date)* _____ ; or

☐ I returned the summons unexecuted because: _____ ; or

☐ Other: _____ ; or

My fees are $ _____ for travel and $ _____ for services, for a total of $ _____

I declare under penalty of perjury that this information is true.

Date: 08/10/2022

_____
*Server's signature*

MATTHEW ROBERTSON Process Server and Disinterested Person
_____
*Printed name and title*

92 State Street 8th Floor, Boston, MA 02109
_____
*Server's address*

Additional information regarding attempted service, etc.:
1) Successful Attempt: Aug 9, 2022, 6:10 pm EDT at 294 COUNTRY CLUB WAY, KINGSTON, MA <u>02364-4121</u> received by Erik Tenczar, Husband.

**Documents Served:** SUMMONS IN A CIVIL ACTION AND AMENDED COMPLAINT FOR DECLARATORY JUDGMENT.